New Jersey·Department of Labor,
Workmen's Compensation Bureau.

MARGARET MOONEY, PETITIONER, v. TEXTILEATHER
CORPORATION, RESPONDENT.

The above matter coming on for hearing and having been submitted to me for decision, I hereby find and determine as follows:

A formal petition in the above matter was filed on or about January 6th, 1928, against the above-named respondent under an act entitled "An act prescribing the liability of an employer to make compensation for injuries received by an employe in the course of employment, establishing an elective schedule of compensation and regulating procedure for the determination of liability and compensation thereunder," approved April 4th, 1911, and the acts amendatory thereof and supplemental thereto. An answer was filed on February 8th, 1928, in which employment of the peititioner's intestate was admitted, knowledge of petitioner's dependents was denied, and in which the respondent disputed compensable liability, leaving petitioner to proof of claim as alleged in her petition. Said answer of the respondent likewise stated as follows:

"Since the American Mutual Liability Insurance Company covered said respondent under the Workmen's Compensation act, commencing November 18th, 1927, and the Great American Indemnity Company of New York was the insurance carrier prior thereto, a motion will be made on trial to join the Great American Indemnity Company of New York as a party

in interest with the American Mutual Liability Insurance Company to determine the ultimate liabilities of the respective insurance carriers, in the event this claim is found to be a compensable death claim."

The case regularly came on for hearing on May 2d, 1928, which hearing was held in the presence of Potter & Berry, attorneys for the petitioner and McCarter & English, attorneys for the respondent, on which day witnesses were produced who were examined in the presence of said counsel. Inasmuch as the insurance carriers could not be parties of record, no motion to join the Great American Indemnity Company of New York as a party in interest was made at the hearing. Proof was, however, submitted of the service of a notice of hearing upon the Great American Indemnity Company of New York, which company had likewise been served with the petition but which had failed to answer the same and did not appear at the hearing.

The testimony showed that the petitioner's intestate, William J. Mooney, died on December 15th, 1927, leaving a wife, the petitioner Margaret Mooney, and seven children, six of said children being under sixteen years of age, the names and dates of birth of said children under sixteen years of age being as follows:

Frances Mooney, July 17th, 1912; William Mooney, January 5th, 1914; Richard Mooney, August 31st, 1916; Anna Mooney, January 5th, 1919; John Mooney, January 19th, 1922, and Rita Mooney, June 2d, 1925.

The deceased had been employed, for approximately the last ten years, with the Textileather Corporation, the respondent. The testimony likewise showed that his occupation, for the last six or seven years, had been as a finisher in that corporation, in which capacity he operated a machine which coated material which passed through the machine on a roller with a composition having benzol as a constituent. The deceased's employer testified that five hundred pounds of the beforementioned composition was used daily by the deceased, and that said composition was twenty-five per cent. benzol; that the deceased worked in a room which was ventilated solely

by windows which frequently, and particularly in the winter time, were closed. There was testimony showing that for the last six years the deceased's health has been continually growing worse, and that within the last two years marked changes in his general appearance and in the general state of his health were noticed. Particularly in this respect was there testimony of loss of color, loss of weight, loss of general animation and a tendency towards lethargy, with disorders of the stomach, nosebleeds, frequent headaches, dizziness and loss of appetite.

The deceased came home from work on December 3d, 1927, feeling quite ill. He was confined to his bed, and since no improvement in his condition occurred, a doctor was called about the middle of the ensuing week. The deceased rapidly declined, failing to make any response whatever to treatment, and died on the following week. The doctor in attendance testified that his patient showed a marked anaemia; that he suffered from a marked pathologic condition of the jaw with bleeding of the gums and infection spreading over not only the gums but the roof of the mouth and the pharynx; that he was at the time of his death suffering from Vincent's infection which was superinduced by his debilitated constitutional condition which, in turn, was caused by his exposure to benzol. Dr. Harrison S. Martland, the chief medical examiner of Essex county, who autopsied the deceased, testified that he found a marked anaemic condition in every way resembling conditions found in death resulting from exposure to benzol, and that the description of the symptoms, which the deceased described before his death and the result shown in the autopsy, gave a clear picture of death as a result of chronic benzol poisoning. The chief medical examiner further testified that from the description of the symptoms given by the witnesses who were closely connected with the deceased, in his opinion, all the elements necessary to cause the death of the deceased were present by the 1st of November, 1927; that the deceased was suffering from a chronic benzol poisoning which he carefully distinguished from acute benzol poisoning, the acute benzol poisoning having a different symptomatology, resulting in a sudden death from the drinking or rapid absorption of

large quantities of benzol at one time; chronic benzol poisoning on the other hand, the chief medical examiner testified, being a condition resulting from continuous or repeated exposure to benzol fumes in concentrations too low to produce marked narcotic effects, characterized by general systemic disturbances, evidenced by headache, dizziness, weakness, loss of appetite and loss of weight, pallor shown by examination due to true anaemia, marked reduction in the white blood cells, bleeding from the nose and gums, the development of purplish spots caused by hemorrhages in the tissues, sore and spongy gums and burning eyes and throat, shortness of the breath and tightness of the chest, and sometimes rash and skin eruptions. All of these symptoms appeared in the deceased before his death, and as the testimony showed, were present with the deceased for a period of at least two years prior to the time of his death. No evidence was submitted in contradiction of these facts.

The testimony, therefore, in the case showed clearly that within a year or two of the time the deceased was first exposed to benzol, which would be about six years prior to his death, that the deceased began to exhibit symptoms of having contracted benzol poisoning, which symptoms gradually increased, and that as said, two years prior to his death, they became very noticeable, and that from that time on, the deceased declined rapidly, finally dying on December 15th, 1927. Dr. McCartie, in addition to having treated Mr. Mooney, the deceased, during his last illness, testified that he was a friend of the family and had had the deceased under his observation for the last six years prior to his death, and that the latter, during that time, had been gradually failing in health, had become anaemic, and in a run-down condition, &c., these things, taken with the other testimony in the case, being all evidential of chronic benzol poisoning.

Dr. Martland testified that the deceased died on December 15th, 1927, as a result of chronic benzol poisoning; that benzol had been undoubtedly affecting the deceased's system from the time he had been first exposed to it, and that the onset of the disease or poisoning was long prior to November 1st, 1927.

352

He further stated that the period from November 18th, 1927, to December 3d, 1927, which is the date on which the deceased 'stopped work, had no material effect on his death.

The weekly wage of the deceased is not disputed, and was $31.50 per week. The proof of dependency is not contradicted and the dependents and their ages are as above stated.

It is, therefore, found and determined that petitioner's intestate, William J. Mooney, was exposed to benzol out of and in the course of his employment with respondent for six years prior to his death, and died as a result thereof, said cause of death being a compensable occupational disease under the Workmen's Compensation act hereinbefore referred to. It is further found and determined that as a result of such exposure, said William J. Mooney contracted benzol poisoning prior to November 1st, 1927, and that prior to that date had the ultimate results of said poisoning in his system which brought about his death on December 15th, 1927. It is further found and determined that the period from November 18th, 1927, to December 3d, 1927, had nothing material to do with said death, and that the period of employment, with respondent, responsible for the death of said William J. Mooney, was that period prior to November 1st, 1927. It is further found that the disability of petitioner's intestate commenced within five months of the determination of said exposure.

Medical expenses of the last illness were as follows: Dr. McCartie, $10; Dr. Snively, $31.

Funeral expenses are allowed in the sum of $150, in accordance with the act; costs of birth certificates produced at the trial amounted to $4.50; subpœna fees and expenses for serving same amounted to $23.50; petitioner's share of stenographic service amounted to $5; compensation board has allowed petitioner's counsel a counsel fee of $500 to be paid by respondent.

It is, therefore, ordered that judgment final be entered in favor of the petitioner, Margaret Mooney, for herself and six dependents, being children of petitioner and the deceased under sixteen years of age, as follows: Frances Mooney, William Mooney, Richard Mooney, Anna Mooney, John Mooney,

Rita Mooney and against the respondent, Textileather Corporation, in the sum of $17 per week, the maximum allowed, for a period of two hundred forty-five and six-sevenths weeks, in all totaling $4,179.57, said period beginning on December 15th, 1927, and extending to August 30th, 1932; and that further judgment final be entered in favor of the petitioner, Margaret Mooney, for herself and dependents Richard Mooney, Anna Mooney, John Mooney and Rita Mooney, and against the respondent, Textileather Corporation, in the sum of $15.75 per week, or fifty per cent. of the deceased's wages, for a period of fifty-four and one-seventh weeks, said period beginning August 31st, 1932, and extending to September 13th, 1933, the sum total for this period being $852.75. It is further ordered that judgment final be entered in favor of the petitioner, Margaret Mooney, for the benefit of dependents, Anna Mooney, John Mooney and Rita Mooney and against the respondent, Textileather Corporation, in the sum of $14.17½ per week, or forty-five per cent. of the deceased's wages, for a period of sixty-eight and two sevenths weeks, said period beginning September 14th, 1933, and extending to January 4th, 1935, the sum total during this period being $967.95. It is further ordered that judgment final be entered in favor of the petitioner, Margaret Mooney, for the benefit of dependents, John Mooney and Rita Mooney, and against the respondent, Textileather Corporation, in the sum of $12.60 per week, or forty per cent. of the deceased's wages, for a period of one hundred fifty-eight and four-sevenths weeks, said period beginning January 5th, 1935, and extending to January 18th, 1938, the sum total during this period being $1,998. It is further ordered that judgment final be entered in favor of the petitioner, Margaret Mooney, for the benefit of the dependent, Rita Mooney, and against the respondent, Textileather Corporation, in the sum of $11.02½ per week, or thirty-five per cent. of the deceased's wages, for a period of one hundred seventy-five and five-sevenths weeks, said period beginning January 19th, 1938, and extending to June 1st, 1941, the sum total during this period being $1,937.25, the sum total for all of the beforementioned periods being

$9,935.52. And it is further ordered that judgment be entered in favor of the petitioner and against the respondent for costs as follows:

Medical expenses during last illness, $41; funeral expenses, $150; costs of birth certificates produced at hearing, $4.50; subpœna fees and expenses of service, $23.50; stenographic service at trial, $5; counsel fee, $500; total, $724.

It is further ordered that expenses, counsel fee and weekly payments from December 15th, 1927, to the date of the signing of this order shall be due and owing upon the signing of this order, subsequent payments to be made weekly as hereinbefore set forth.

HARRY J. GOAS,
*Deputy Commissioner.*